# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JULIET JONES,**

     Plaintiff,

v.

**METRO ONE LOSS PREVENTION
SERVICES GROUP, INC.**

     Defendant.

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, Juliet Jones, by and through her attorney, David M. Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

**1.** Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Commission. Plaintiff alleges that she was subjected to sex discrimination and retaliation in the workplace of Defendant.

### II. Jurisdiction and Venue

**2.** This action arises under Title VII and the Pennsylvania Human Relations Act. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

**3.** This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**4.** Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Middle Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

**5.**     Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding her allegations under Title VII on July 15, 2022, under charge number 530-2023-00566. *See Exhibit 1.*

**6.**     Plaintiff was mailed a Notice of Right to Sue on October 12, 2023. This complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2.*

### III. Parties

**7.**     Plaintiff, Juliet Jones ("Plaintiff"), is an adult individual with a primary residence located at 1425 Crooked Hill Road, #61764, Harrisburg, Pa 17106.

**8.**     Defendant, Metro One Loss Prevention Services Group, Inc.  ("Defendant") is a Texas business corporation, with a regular place of business located at 5830 Granite Parkway, Suites 100-353, Plano, TX 75024.

### IV. Facts

**9.**     Plaintiff, an African-American female, worked remotely for Defendant as a Recruiter to hire unarmed security guards for Defendant's client, Amazon.

**10.**     There were two recruiters on Plaintiff's team that were responsible for training her but didn't do so properly.

**11.**     Plaintiff's manager's name was Cody Husken.

**12.**     Husken's boss and Performance Manager was Raymond Cox.

**13.**     Staff were afraid to speak to Cox regarding communication issues, ways to streamline productivity, etc.

**14.**     Plaintiff spoke up because procedures weren't being followed properly.

**15.**   Members of Plaintiff's team were hiring security guards with incomplete paperwork, such as I-9's.

**16.**   Prior to a security guard starting, applicants are to have filled out their I-9, W-4, and have a completed background check.

**17.**   Plaintiff followed these rules with all guards she hired.

**18.**   During the week of September 20, 2022, Cox wanted to replace Husken.

**19.**   Cox felt like Husken was "checking out" because Husken was planning on moving to another state with his girlfriend.

**20.**   Cox asked Plaintiff to find a replacement for Husken.

**21.**   Plaintiff sent applicants to Cox to interview and scheduled the interviews.

**22.**   At the same time, Cox told Plaintiff about the job and indicated/insinuated that it was hers if she wanted it.

**23.**   Cox told Plaintiff that he wanted someone in this position that he could trust and would prefer a female over a male.

**24.**   Due to the hours and workload of this position, like working more than 40 hours a week, being on call 24/7, and working as a recruiter and account manager, Plaintiff declined the verbal offer.

**25.**   After turning down the offer, Cox became short with Plaintiff on the phone and in meetings.

**26.**   Conversations between Plaintiff and Cox went from being friendly to just being about business.

**27.**   Husken also became short and strictly business with Plaintiff as well.

**28.**     Plaintiff soon began receiving emails that accused her of not doing her work properly.

**29.**     Plaintiff had to take the time to show that she was doing her job properly by providing examples of what she was accused of not doing.

**30.**     One example of this is the RDG1 site being assigned to a different recruiter and then Plaintiff being assigned to assist, not take over.

**31.**     Plaintiff continued working at her sites. At this time, the Bethel location was heavily understaffed.

**32.**     Plaintiff was assigned to work Bethel, her own sites (Yor, Lewisberry, Carlisle), and help the other recruiter.

**33.**     In addition to her workload, Plaintiff was asked to do a one off and hire for a new client as well as find Husken's replacement.

**34.**     Plaintiff was working until 8 p.m. most nights in an attempt to meet unreasonable expectations.

**35.**     Plaintiff did meet the expectations by fully staffing her sites and hiring two new people for the client, and finding Husken's replacement.

**36.**     Plaintiff kept a spreadsheet of all her efforts and hires that's he sent to Cox every Wednesday and Friday.

**37.**     Cox began nitpicking her work as if he was looking for something.

**38.**     Plaintiff went from receiving emails stating that she was doing a great hob to receiving email accusations about her not doing her job.

**39.**     Plaintiff received an email from Cox accusing her of hiring someone that wasn't finished with the onboarding.

**40.** Plaintiff responded stating that hire's onboarding had been completed.

**41.** After this, sites were removed from Plaintiff's supervision.

**42.** Plaintiff was told not to hire anyone for the RDG1 site for two days.

**43.** On the third day, Plaintiff was given back the site, on Wednesday.

**44.** Plaintiff as told she needed to have the RDG1 site fully staffed by Sunday.

**45.** Plaintiff's scheduled hours were Monday through Friday.

**46.** Human Resources gave managers a spreadsheet to fill out.

**47.** Husked gave Plaintiff his sheet and instructed her to fill it out.

**48.** The spreadsheet contained all of the new hires before Plaintiff's employment who had been working with unfinished paperwork in the system, such as unfinished I-9 forms.

**49.** Plaintiff was asked t9o immediately get the issues fixed while her sites were removed from her.

**50.** Plaintiff had to ask on a daily basis if she was allowed to hire people and what work she was to be doing because her job duties became unclear.

**51.** Plaintiff was still employed as a Recruiter but was given Manager work.

**52.** Plaintiff was informed that meetings were optional for her to attend, before they had been mandatory.

**53.** During a meeting she attended, Plaintiff was overlooked. She normally opened the Thursday meetings with her recruiting statistics.

**54.** Plaintiff also received emails stated that she mislabeled an employee, Jessica Strove, as a supervisor.

**55.** Plaintiff checked on this employee and saw that she was labeled as an unarmed security guard.

56.     On another occasion, Plaintiff hired an employee named Johnny Bonificia and completed his onboarding.

57.     Plaintiff's name was removed from this employee and the credit was given to another recruiter.

58.     Plaintiff addressed this issue with the recruiter who was given the credit for her hire and with Cox. She wanted her name relisted as the recruiter.

59.     Both the recruiter and Cox was aware that Plaintiff hired him.

60.     This event happened after Plaintiff addressed Cox about the retaliation and change in the working environment after turning down the job offer.

61.     Plaintiff started to feel depressed and anxious.

62.     Plaintiff had a doctor's appointment on October 21m 2022 to have her heard and stress levels checked.

63.     Plaintiff also informed Cox that she had a surgery scheduled and needed to discuss the days she needed off as well as a possible ADA accommodation.

64.     Cox rushed to get off the phone and sent Plaintiff an email that referred her to Human Resources.

65.     Plaintiff reached out to HR on October 11, 2022 regarding the same but did not hear back.

66.     Plaintiff was stellar employee prior to rejecting the job offer and was being demoted after the rejection.

67.     On October 14, 2022, Plaintiff reached out to Husken to get clarity on the work she was to be doing. Husken did not reply.

68.     Two other recruiters, Kendrix and Shamyah, were promoted to Lead Recruiter.

**69.** Plaintiff was not offered this position and only found out about it from an email on October 14th.

## COUNT I

### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964

**70.** The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

**71.** A plaintiff must first establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for the position she sought to attain or retain, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Jones v. Temple Univ., 622 F. App'x 131, 134 (3d Cir. 2015) (citing Mandel v. M & Q Packing Corp., 706 F.3d 157, 169 (3d Cir. 2013)).

**72.** Plaintiff's protected class is her sex/gender.

**73.** Plaintiff was offered the manager position after being told by Cox that he would prefer a female to a male in this position.

**74.** Plaintiff was continuously discriminated against as because she is a female who turned down an offer.

**75.** Plaintiff suffered further adverse employment action when she was constructively discharged from her position with Defendant.

**76.** The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## COUNT II

**Sex Discrimination in Violation of the PHRA**

**77.**   The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

**78.**   Plaintiff is of a protected class of sex/gender.

**79.**   Defendant engaged in discriminatory conduct in violation of the PHRA allowing the known sex- discrimination to continue and then forcing her to quit her job.

**80.**   Plaintiff suffered further adverse employment action when she was constructively discharged from her position with Defendant after reporting the discrimination.

**81.**   The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

<u>**COUNT III**</u>

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

**82.**   The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

**83.**   In order to state a claim for retaliation under Title VII, a plaintiff must show:

    a.   She "engaged in a protected activity," including "informal protests of discriminatory employment practices" made to a member of a defendant's management;

    b.   "Adverse" employment action was taken against the plaintiff "after or contemporaneous with the employee's protected activity;" and

    c.   "A causal connection between the protected activity and the adverse action." Moore v. Sec. U.S. Dept. of Homeland Sec., 718 Fed. Appx. 164, 166-67 (3d Cir.

2017) (unpublished) (quoting Daniels v. Sch. Dist. of Phila., 776 E. 3d 181, 193 (3d Cir. 2015).

84. Plaintiff engaged in protected activity when she reported the sex discrimination she was facing with Defendant.

85. Plaintiff suffered further adverse employment action in the form of retaliation when she was constructively discharged from her position with Defendant.

86. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## COUNT IV

### Retaliation in Violation of the PHRA

87. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

88. The analytical framework used to evaluate a claim under the Pennsylvania Human Relations Act ("PHRA") is effectively indistinguishable from that under Title VII. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).

89. Plaintiff suffered further adverse employment action in the form of retaliation when she was constructively discharged from her position with Defendant.

90. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against Defendant, and award all damages available at law and equity, including:

a)   Lost back pay resulting from Defendant's termination of Plaintiff;

b)   Lost front pay continuing into the future for Defendant's unlawful conduct;

c)   Compensatory damages, including emotional damages and humiliation;

d)   Punitive damages to punish Defendant's conduct and to deter similar future conduct;

e)   Costs for bringing this action;

f)   Attorney's fees;

g)   Pre-judgment and continuing interest; and

h)   Any other relief that this Court deem necessary and proper

Respectfully Submitted,

/s/ David M. Manes__
David M. Manes, Esq.
PA ID: 314661
**Manes & Narahari LLC**
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
(412) 626-5590 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

## VERIFICATION

I, Juliet Jones, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

I understand that the statements therein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_____

Juliet Jones

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JULIET JONES,

**(b)** County of Residence of First Listed Plaintiff    Dauphin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David M. Manes, Esq.         Manes & Narahari, LLC
301 Grant Street, Suite 270    412-626-5570
Pittsburgh PA 15219

## DEFENDANTS

METRO ONE LOSS PREVENTION SERVICES GROUP, INC.

County of Residence of First Listed Defendant    Plano
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
N/A

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964, Pennsylvania Human Relations Act
Brief description of cause:
Plaintiff was constructively discharge retalaition for her gender.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE                    DOCKET NUMBER

DATE
01/10/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# Exhibit 1

**U. S. Equal Employment Opportunity Commission**
**Pittsburgh Area Office**

**JULIET JONES,**

     Charging Party,                      EEOC Charge No.  530-2023-00305

v.

**METRO ONE LOSS PREVENTION**
**SERVICES GROUP, INC.**

     Respondent.

<u>**AMENDED CHARGE OF DISCRIMINATION**</u>

1. I am the Charging Party, Juliet Jones. The contact information for myself and my legal counsel is as follows:

| | |
|---|---|
| **Juliet Jones** | **David Manes, Esq.** |
| 1425 Crooked Hill Road | MANES & NARAHARI, LLC |
| #61764 | 301 Grant St, Suite 270 |
| Harrisburg, Pa 17106 | Pittsburgh, PA 15219 |
| Jjones@certifiedhrexperts.com | (412) 626-5570 Direct |
| DOB: 11/25/1973 | (412) 650-4845 Fax |
| Race: Bi-racial | dm@manesnarahari.com |

2. Respondent is Metro One Loss Prevention Services Group, Inc. I worked remotely, but the corporate address for Respondent is 5830 Granite Parkway, Suite 100-353, Plano, TX 75024.

3. Kelli Springfield, an employee for Respondent in the Human Resources Department is aware of the filing of an EEOC Charge and said to contact her.

4. Kelli can be contacted at kspringfield@metroonelpsg.com  and (972) 465-0755.

5. I was hired as a Recruiter with Respondent to hire unarmed security guards for their client, Amazon.

6. Two recruiters on my team were to train me but did not do so properly

7. My manager was Cody Husken.

8. Husken's boss was Raymond Cox, the Performance Manager.

9.  Staff were afraid to speak to Cox about communication issues, ways to streamline productivity, etc.

10. I, however, spoke up against procedures being followed improperly.

11. Members of my team were hiring security guards with incomplete paperwork such as I-9's.

12. Prior to a security guard starting, we were to have applicants fill out their I-9's and W4 as well as have a completele4d background check.

13. I followed these rules.

14. During the week of September 20, 2022, Cox wanted to replace Husken, sharing that he felt like Husken was "checking out" because he was planning on moving with his girlfriend to another state.

15. Cox asked me to find Husken's replacement.

16. I sent applicants to Cox to interview and scheduled the interviews.

17. At the same time, Cox told me about the job and indicated/insinuated that "it was mine if I wanted it".

18. Cox to me he wanted someone he could trust in this position and would prefer a female over a male.

19. Due to the hours and workload this role would offer, such as working over 40 hours a week, being on call 24/7, and working as a recruiter and account manager, I declined the verbal offer.

20. After turning down the offer, Cox was short with me on the phone and in meetings. Our conversations went from being friendly to strictly business.

21. Husken had started to be short with me as well.

22. I began getting emails accusing me of not doing my work properly.

23. I had to spend time to show that I was and provide examples that I was doing what I was accused of not doing.

24. One example of this is the RDG1 site being assigned to a different recruiter and I being assigned to assist not take over.

25. I was working at my sites. At this time, the Bethel location was heavily understaffed.

26. I was then assigned to work Bethel, my own sites (York, Lewisberry, Carlisle), and help the other recruiter.

27. In addition to this workload, I was asked to do a one off and hire for a new client as well as find Husken's replacement.

28. I was working until 8 p.m. most nights in an attempt to meet unreasonable expectations.

29. I did meet the expectations by fully staffing my sites and hiring two people for the new client, and finding Husken's replacement.

30. I kept a spreadsheet of all my efforts and hires that I sent to Cox every Wednesday and Friday.

31. Cox began to nitpick at my work and hires as if he was "looking for something".

32. I went from receiving emails tell me that I'm doing a great job to being accused of not doing my job.

33. I received an email from Cox accusing me of hiring someone that wasn't finishing with the onboarding.

34. I responded saying that person's onboarding had been completed.

35. Sites were removed from my supervision.

36. I was informed not to hire anyone for site RDG1 for two days. However, on day three the site was given back to me on a Wednesday.

37. I was told the site had to be fully staffed by Sunday. I work Monday through Friday.

38. Human Resources gives a spreadsheet to the managers to fill out.

39. Husken gave me his spreadsheet and told me to do it.

40. This sheet contained all of the hires before I was hired who had been working with unfinished paperwork in the system, such as unfinished I-9 forms.

41. I was asked to immediately get the issues fixed while my sites have been removed from me.

42. On a daily basis I had to ask f I was allowed to hire people, the work I was to be performing, because my job duties had become unclear.

43. I was being assigned Manager work as a recruiter.

44. I was also told that meetings for me were optional for me to attend when meetings her mandatory before.

45. During a meeting I attended, I was overlooked. I usually open Thursday meetings for my team with my recruiting stats.

46. I also received emails stating that I mislabeled an employee named Jessica Strove as a supervisor. When I checked the system, it showed that I had entered her as an unarmed security guard.

47. On another occasion, I hired a man named Johnny Bonificia. I completed his onboarding.

48. However, my name was removed for the credit of hiring and onboarding Bonificia and the credit was given to another recruiter.

49. I addressed this with the recruiter and with Cox before I could change the system back to saying I was the recruiter.

50. Both the recruiter and Cox were aware that I had hired him.

51. This happened after I addressed Cox about the retaliation and change in environment since turning down the promotion, he offered me.

52. I started to get depressed and anxious.

53. I scheduled a doctor appointment for October 21, 2022 to have my heart and stress levels checked.

54. I also informed Cox that I had a surgery scheduled and needed to discuss my days off and possibly an ADA accommodation.

55. Cox rushed me off the phone and then sent me an email referring me to HR.

56. I reached out to HR on October 11, 2022 and did not hear back.

57. On October 14, 2022, I reached out to Husken for clarity on what work I am supposed to do and what the process of that work is. I did not hear back from him.

58. I went from being stellar employee to being demoted.

59. Another recruiter, Kendrix, had been promoted as well as another recruiter, Shamyah, being promoted to Lead Recruiter.

60. I was not offered the Lead Recruiter role and had only found out about it in an email on October 14, 2022.

61. I believe Respondent retaliated and discriminated against me based on my race in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act of 1955.

62. I believe Respondent retaliated and discriminated against me based on my sex in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act of 1955.

63. I believe I was subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act of 1955.

64. I want this Charge cross-filed with the PHRC and investigated by the EEOC.

65. I wish to take part in an EEOC mediation.

66. I swear, subject to penalty of perjury, that the foregoing is true and accurate to the best of my knowledge.

___12/09/2022_____
Date

_____
Juliet Jones

# **Exhibit 2**

EEOC Form 161-B (01/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | | |
|---|---|---|
| To: | **Juliet Jones**<br>**1425 Crooked Hill Road #61764**<br>**Harrisburg, PA 17106** | From: | **Pittsburgh Area Office**<br>**1000 Liberty Avenue, Suite 1112**<br>**Pittsburgh, PA 15222** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **533-2023-00566** | **Philadelphia District Office**<br>**Legal Unit** | **(267) 589-9700** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Deborah A. Kane
10/12/2023

Enclosures(s)

**Deborah A. Kane**
**Area Director**

cc:  **Kelli Springfield**
**58030 Granite Parkway**
**Plano, TX 75024**

**David  Manes**
**Manes & Narahari, LLC**
**301 Grant St, Suite 270**
**Pittsburgh, PA 15219**

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***