IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULIET JONES,** | |
| Plaintiff, | Case No. 1:24-cv-37 |
| v. | |
| **METRO ONE LOSS PREVENTION SERVICES GROUP, INC.** | JURY TRIAL DEMANDED |
| Defendant. | |

**PLAINTIFF'S PREHEARING MEMORANDUM**

Plaintiff respectfully submits the following Prehearing Memorandum in advance of the hearing on her Motion for Default Judgment scheduled for October 28, 2024:

**I.     SUMMARY OF THE CASE**

Plaintiff is an adult female who was hired as a remote employee responsible for hiring unarmed security guards for Defendant's client, Amazon. Two recruiters on Plaintiff's team were tasked with training her but failed to do so properly. Plaintiff's manager, Cody Husken, reported to the Performance Manager, Raymond Cox.

Staff were afraid to speak to Cox regarding any work-related issue such as communication issues and streamlining. Plaintiff spoke up because procedures were not being properly followed, such as guards being hired without completed paperwork. Prior to a new guard starting, applicants are supposed to have their I-9 and W-4 completely filled out as well as a complete background check. Despite others not following these rules, Plaintiff did.

During September of 2022, Cox wanted to replace Husken because he felt like Husken was "checking out." Husken was planning on moving to another state with his girlfriend. Cox had asked Plaintiff to find a replacement for Husken. Plaintiff sent applicants to Cox to interview as

well as scheduled the interviews. Cox insinuated the job was Plaintiff's if she wanted it. Cox preferred a female over a male for the position.

Due to the hours and workload of the position, Plaintiff declined the offer. After declining the offer, Cox became short with Plaintiff over the phone and in meetings. Cox went from being friendly towards Plaintiff to being strictly about business. Husken did the same. Plaintiff began to receive emails accusing her of not doing her job properly. She had to take time to show that she was doing her job and providing examples of what she was accused of not doing. Plaintiff also had to work until 8 p.m. most nights to meet unreasonable demands placed on her since declining the position.

In addition to unreasonable workloads, Plaintiff continued to get accusations against her as well as started having her sites removed from her. Meetings that had been mandatory for her became optional. At meetings, she was overlooked. Plaintiff spoke to Cox about the discrimination she had been facing since turning down the job offer. Nothing changed. Plaintiff was qualified for the position of Lead Recruiter but didn't learn about the position until it had been filled. Plaintiff was not informed of this position due to being a female who rejected Cox's job offer.

Although Defendant was properly served (ECF No. 5), Defendant failed to file an Answer to Plaintiff's Complaint or plead otherwise.

II. **APPLICABLE LAW**

**COMPLAINT: Plaintiff was discriminated based on her sex in violation of Title VII of the Civil Rights Act of 1964 and the PHRA**

As a result of Plaintiff being a female who turned down Cox's job offer, Plaintiff was subjected to discrimination on the basis of her gender.

Plaintiff has established a prima facie case of discrimination by showing that she is a member of a protected class, she was qualified for the position she sought to attain or retain, she suffered an adverse employment action, and the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Jones v. Temple Univ.*, 622 F. App'x 131, 134 (3d Cir. 2015) (citing *Mandel v. M & Q Packing Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).

Plaintiff was offered one position solely because of her gender. Once she turned down that position, she was the only employee subjected to the discrimination imposed on her by Cox and Husken. Later, a position opened up that she would have applied for but only found out about it after it was filled. Plaintiff was not informed of this position due to her being female and turning down a role that Cox had wanted a female to take over.

**COMPLAINT: Plaintiff was retaliated against when she reported incidents of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the PHRA**

For Plaintiff to state a claim for retaliation under Title VII, she must show, and has shown, that engaged in a protected activity, that she suffered adverse employment action, and a causal connection between the adverse action and the protected activity. *Moore v. Sec. U.S. Dept. of Homeland Sec.*, 718 Fed. Appx. 164, 166-67 (3d Cir. 2017) (unpublished) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 E. 3d 181, 193 (3d Cir. 2015).

Plaintiff reported the discrimination that was perpetrated by Cox to Cox, as he was a member of management. As a result, Plaintiff was accused of not doing her job, given unreasonable workloads, being ignored, and was not informed of a job she would have applied for. There is a clear connection between Plaintiff turning down a job offer and reporting discrimination as a result of turning down that job offer, reporting the resulting discrimination, and continuing to experience adverse employment actions.

### III. Monetary Damages Claimed

Plaintiff is seeking to recover damages for lost wages, compensatory damages, punitive damages, Plaintiff's legal fees, pre-judgment and continuing interest, court costs, and other relief as may be deemed just and proper.

While working for Defendant, Plaintiff made about $50,000 per year, or $43.28 per hour. She worked about 40 hours per week. Her last day of work for Defendant was July 28, 2023. After leaving her position with Defendant, Plaintiff was out of work for approximately 4 weeks, leaving her with **$6,924.80 in back pay damages**.

In addition to back pay, Plaintiff is entitled to compensatory and punitive damages, as well as attorney's fees. She sought mental health treatment from a psychologist to manage the upset caused by Defendant. Plaintiff did reach out to Human Resources while working for Defendant regarding the discrimination and retaliation that she was forced to face. After making her report, there was no corrective action put in place. She had no other option than to leave her job. The emotional distress caused to Plaintiff by Defendant's wrongful actions as well as Defendant's malice and/or reckless indifference to Plaintiff's rights entitles her to at least **$200,000 in compensatory damages** (under Title VII or the PHRA) and at least **$50,000 in punitive damages** (under Title VII).

Therefore, Plaintiff respectfully requests a total judgment in the amount of **$256,924.80**.

### IV. Identification of Witnesses

A. **Juliet Jones,** Plaintiff

Plaintiff can testify with respect to all aspects of the case. Plaintiff reserves the right to refuse to call individuals on this list, as well as to supplement as may be reasonably necessary between the timing of this filing and the hearing.

## V. Estimated Length of Damages Hearing

Plaintiff estimates that the hearing to determine damages of this matter will last less than one day in total.

Respectfully Submitted,

/s/ David M. Manes
David M. Manes, Esq.
PA ID: 314661
**Manes & Narahari LLC**
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
(412) 626-5590 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

# **CERTIFICATE OF SERVICE**

I, David M. Manes, Esq., hereby certify that a true and correct copy of Plaintiff's Prehearing Conference Memorandum was served on the following by first-class mail on October 18. 2024:

Metro One Loss Prevention Services Group, Inc.
5830 Granite Parkway, Suites 100-353
Plano, TX 75024

*Defendant*

Respectfully Submitted,

/s/ David M. Manes

David M. Manes, Esq.